UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| WILLARD KEENE, | : | Civil Action No. 05-828(JJH) |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | **O P I N I O N** |
| | : | |
| SEARS ROEBUCK & CO., INC., et al., | : | |
| | : | |
| Defendants. | : | |
| _____ | : | |

**HUGHES, U.S.M.J.**

This matter having come before the Court upon Motion by Defendants Sears, Roebuck,

and Co. and Somiya Bhatnagar for Motion for Judgment as a Matter of Law on Plaintiff's

remaining claims alleging (1) a violation under the New Jersey Law Against Discrimination,

N.J.S.A. 10:5-1, et seq. for failing to take prompt, effective, and remedial action and failing to

train, supervise, and discipline the Plaintiff (Count II of the Complaint), (2) Breach of Contract

(Count VII of the Complaint), and (3) Breach of Implied Covenant of Good Faith and Fair

Dealing (Count VIII of the Complaint) (See Pl. ['s] Amend. Compl. ¶ ¶ 18-20, 33-38). [Docket

Entry # 50].[1]  Plaintiff opposes the Motion [Docket Entry # 63].  The Court considered the

---

[1] The motion was originally brought by Defendants' as a motion for Summary Judgment
[Docket Entry # 50], returnable September 4, 2007, pursuant to Federal Rule of Civil Procedure
56.  The Court, for the reasons expressed on the record on September 4, 2007, decided to treat
Defendants' motion as a motion for Judgment as a Matter of Law, pursuant to Federal Rule of
Civil Procedure 50, at the conclusion of Plaintiff's case at trial.  Specifically, the Court notes that
a renewal of summary judgment was invited by the then trial judge.  The Court was prepared to
make a decision before trial but decided to treat the Defendants' renewed motion for Summary
Judgment as a motion for Judgment as a Matter of Law in order to accommodate Plaintiff and
allow him every opportunity to present evidence.

submissions of the parties and conducted oral argument on September 6, 2007.  For the reasons

set forth below, Defendants' Motion for Judgment as a Matter of Law as to Counts II, VII, and

VIII is granted. [2]

## I.     BACKGROUND AND PROCEDURAL HISTORY

### A. Factual Background

Plaintiff Willard Keene ("Plaintiff") was an appliance salesman at Sears' Seaview Square

store.  Plaintiff was hired by Sears, Roebuck & Company ("Defendant") as a Sales Associate at a

store in Ocean Township, New Jersey on July 16, 1991 and served as an employee of Sears for

twelve (12) years.  (Pl.'s Ltr. Br. at 5).  During his employment, Plaintiff had no disciplinary

action taken against him for any reason.  Id.  In 1999, Plaintiff was transferred to the "Brand

Central" Department, "one of the most lucrative placements for a Sales Associate."  Id. at 6, 14.

Following his transfer, Plaintiff continued his employment without any disciplinary problems.

Id. at 7.

In the mid to late 1990s, Sears changed its business practices by increasing its emphasis

on customer satisfaction and giving sales associates authority to implement the changes.  Id.  As

part of this new emphasis on customer satisfaction, Sears gave sales associates more autonomy

in their decisions without requiring them to first obtain management approval before adjusting

the price of merchandise.  Id. at 10.  For example, sales associates were permitted to extend a

---

[2] Defendants' also moved for Judgment as a Matter of Law on Counts I (violation of the New Jersey Law Against Discrimination 10:5-1, et seq. for age discrimination) and III (a violation of the New Jersey Law Against Discrimination 10:5-1, et seq. for wrongful termination), both of which the Court denied without prejudice.  Furthermore, the Court denied without prejudice the individual claims against Mr. Bhatnagar.  Finally, the Court denied the motion for Judgment as a Matter of Law to bar "front-pay" without prejudice which the Court will renew at the jury instruction conference.

discount of up to 10% to customers for various reasons without first obtaining management approval.  Id. at 11.  This policy was in Sears' written policies.  Id.

In October 2002, Somiya Bhatnagar, a 29 year old male, was hired as Store Manager in the Ocean Township Sears store where Plaintiff was employed.  Id. at 14.  Plaintiff contends that Mr. Bhatnagar treated him with hostility, frequently ignored him or failed to acknowledge him, and deliberately failed to speak to Plaintiff by name.  Id.  As an example, Plaintiff alleged that, in one instance, Mr. Bhatnagar directed that a refund be "credited to Mr. Keene's account even though Mr. Keene was not the original associate who rang the transaction" which resulted in a reduction of Plaintiff's revenue figures used to calculate payment and commissions.  Id.

During the week of December 9, 2002, Plaintiff extended discounts to eight (8) customers within a two day period.  Id. at 14-15.  Some of the discounts extended by Plaintiff during this week were the result of a sale that was scheduled for Saturday of the same week.  Id. at 16.  The discounted prices paid by these customers during the week were no less than the price the customers would have paid if the merchandise had been purchased during the sale on Saturday.  Id. at 17.

On December 14, 2002, Plaintiff was brought into the office of the asset protection manager, Mr. McCarthy and told that he had improperly extended discounts to customers during the week of December 9, 2002.  Id. at 18.  During this meeting, Plaintiff was instructed to provide a written statement which required his date of birth and all of the facts and circumstances regarding the discounts Plaintiff extended.  Id.  Plaintiff claims that following this meeting, Mr. Bhatnagar treated Plaintiff with hostility by refusing to address Plaintiff by name

and instructing the Asset Production Manager not to provide Plaintiff with a copy of his own statement.  Id.

On December 16, 2002, Plaintiff was called into the store to discuss with Mr. Bhatnagar the status of his employment.  Id. at 19.  Plaintiff contends that Mr. Bhatnagar was hostile and demeaning during this meeting by demanding that Plaintiff immediately "sit down" and by talking to Plaintiff through Angela Velardi, a witness.  Id.  Mr. Bhatnagar then told Plaintiff that he was being terminated for violating Company policy.  Id.  Plaintiff contends that Mr. Bhatnagar refused to explain what policy Plaintiff had violated and told Plaintiff that there were no avenues of appeal.  Id.  Plaintiff claims that he never received any termination letter or other document explaining the basis for his termination.  Id. at 20.  Internal corporate documentation of Sears indicates that Plaintiff retired and makes no mention of his being terminated.  Id.

Also on December 16, 2002, Mohammad Moinuddin was hired to fill Plaintiff's position in the Brand Central Department.  Id.  Plaintiff further contends that Mr. Moinuddin extended a 25% discount to Mr. Bhatnagar's cousin.  Id. at 27.  Plaintiff further claims that Mr. Bhatnagar himself extended unauthorized discounts to his cousin and his cousin's relative, which were not viewed as violations of company policy by Sears, in direct contrast to Defendants' treatment of Plaintiff.  Id. at 26.

### B. Procedural History

On December 9, 2004, Plaintiff filed a Complaint against Defendants in the Monmouth County New Jersey Superior Court alleging (1) violations of the New Jersey Law Against Discrimination ("NJLAD"), including age discrimination, (2) intentional infliction of emotional

distress, (3) breach of contract, and (4) breach of implied covenant of good faith and fair dealing. (See Pl.'s Compl.).  Paragraph nine (9) of Plaintiff's initial Complaint made reference to Mr. Bhatnagar's national origin although the specific nature of his national origin was not known to Plaintiff at that time.  (Pl.'s Reply Ltr. Br. at 2).  Defendant Sears, Roebuck and Co. removed the case to federal court on February 14, 2005.  (See Dkt. no. 05-828, entry no. 1).

Plaintiff filed a First Amended Complaint on March 21, 2005 to include discrimination based on Plaintiff's handicap.  (See Dkt. no. 05-828, entry no. 8).  Defendants filed an answer and affirmative defenses on April 4, 2005, and filed an amended answer to the First Amended Complaint on February 23, 2006.  (See Dkt. no. 05-828, entry no. 9, 16).  This Court entered an Order setting discovery deadlines on March 21, 2006 which required Defendants to file summary judgment motions no later than June 9, 2006.  (See Dkt. no. 05-828, entry no. 17).

Defendants filed a motion for summary judgment on June 9, 2006 which was granted in part and denied in part on August 2, 2006.  (See Dkt. no. 05-828, entry no. 18, 31).  Specifically, Defendants' summary judgment motion was granted as to counts 4-6 of Plaintiff's amended complaint (violation of NJLAD for handicap and perceived handicap and intentional infliction of emotional distress), denied as to counts 1-3 (violation of NJLAD for age discrimination, failing to take appropriate remedial action and failure to train, supervise and discipline, and wrongful termination), and denied without prejudice as to counts 7-8 (breach of contract and breach of implied covenant of good faith and fair dealing).  (See Dkt. no. 05-828, entry no. 31).  During oral argument on the summary judgment motion on July 31, 2006, Judge Cooper noted, without

objection or comment from Plaintiff's counsel, that there was no claim for national origin or race discrimination in Plaintiff's complaint.  (Defs.' Opp. Mem. at 5).

A Final Pretrial Conference was held on October 6, 2006, and a Final Joint Pretrial Order was filed on November 6, 2006.  (See Dkt. no. 05-828, entry no. 36).  Plaintiff filed a Motion to Amend/Correct his Complaint on November 10, 2006 seeking to change the reference to Mr. Bhatnagar's national origin in paragraph 9 of the original and first amended complaints from "of foreign descent" to "of Indian/Asian descent."  (See Pl.'s Compl. at ¶ 9; Pl.'s Second Am. Compl. at ¶ 9).  Plaintiff further proposed to alter paragraph 14 of the original and first amended complaints from referencing only Plaintiff's replacement with younger individuals.  Plaintiff also sought to change Count I from a purely age discrimination violation of the NJLAD to one that includes race and/or national origin.  (See Dkt. no. 05-828, entry no. 37).  The Motion was subsequently denied on January 8, 2007.  (See Dkt. No. 05-828, entry no. 45).

The present motion was first filed by Defendants on July 27, 2007 as a Motion for Summary Judgment on Counts II, VII, and VIII of Plaintiff's complaint.  The Court, relying on Federal Rule of Civil Procedure 1 ("[the rules] shall be construed and administered to secure the just, speedy, and inexpensive determination of every action"), decided to consider the motion as a Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50.

II.   **DISCUSSION**

   A.   ***Standard for Judgment as a Matter of Law***

Pursuant to Federal Rule of Civil Procedure 50 (a)(1)(A)(B), "[i]f a party has been fully heard on an issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue, the court may (A) resolve the issue against the party; and (B) grant a motion for judgment as a matter of law against the party on a claim or a defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue."  Furthermore, "[a] motion for judgment as a matter of law may be made at any time before the case is submitted to the jury."  Fed. R. Civ. P 50 (a)(2). The motion must "specify the judgment sought and the law and facts that entitle the movant to the judgment."  Id.

### B.    *Defendants' Failure to Take Prompt and Effective Remedial Action (Count II)*

Defendants contend that Plaintiff's "Lehmann negligence" claim must fail as a matter of law. (Defs.' Mem. Summ. J. at 17).  Plaintiff alleges that Defendants violated the New Jersey Law Against Discrimination ("NJLAD") by failing to take prompt, appropriate, and effective remedial action to address the discrimination and harassment of Plaintiff on account of his age by failing to properly train, supervise, and discipline employees of the Defendant. Defendants argue that an employer's alleged negligence in failing to prevent and remediate harassing behavior is not an independent cause of action under New Jersey law.  See DeMaria v. The Home Depot, 1998 WL 1750127, at *2 (D.N.J. 1998).  We agree.

Under the NJLAD, a plaintiff presents an actionable hostile work environment claim when the harassing conduct about which he complains (1) would not have occurred but for his protected class; and that it was (2) severe or pervasive enough to make a reasonable person of his

protected class believe that (3) the conditions of his employment were altered and the work environment had become hostile or abusive.  <u>Hargrave v. County of Atlantic</u>, 262 F. Supp. 393, 411-12 (D.N.J. 2003) (citing <u>Lehmann v. Toys-R-Us, Inc.</u>, 132 N.J. 587 (1993)).  If an employee-plaintiff demonstrates a hostile work environment and an employer-defendant negligently fails to have in place preventative measures to guard against workplace harassment, the defendant-employer may be held vicariously liable under NJLAD for a supervisor's creation of a hostile work environment.  <u>Lehmann</u>, 132 N.J. at 592; <u>Payton v. New Jersey Turnpike Auth.</u>, 292 N.J. Super. 36, 40, 476-50 (App. Div. 1996).

In 1998, the court held that the <u>Lehmann</u> decision did not create a common law claim for negligence independent of the NJLAD.  <u>DeMaria</u>, 1998 WL 1750127, at *2.[3]   The court explained that "[n]owhere did the <u>Lehmann</u> Court suggest that it had created an entirely new negligence cause of action independent of the NJLAD.  <u>Id.</u>  Thus, "<u>Lehmann</u> negligence" does not exist independently of NJLAD.  <u>Id.</u> at 3.

Here, the trial judge has already determined that Plaintiff cannot present a triable hostile work environment claim.  (<u>See</u> Def. Mem. Summ. J., Ex. B, at 9, 20).  Specifically, the Court found that "no hostile work environment claim may be asserted" and "[e]ven though there a few allegations that [Mr. Bhatnagar] was not polite and was not good on an interpersonal level with the defendant [sic], I do not see it rising to the level of hostile work environment."  <u>Id.</u>  Thus, since Plaintiff cannot establish a hostile work environment as a matter of law, a <u>Lehmann</u> claim

---

[3] Since then, no New Jersey court has recognized a claim for "<u>Lehmann</u> negligence" independent of the NJLAD.

cannot be established.  Therefore, Defendant's Motion for Judgment as a Matter of Law is granted with respect to Count II.

### C.    Breach of Implied Employment Contract Claim (Count VII)

Plaintiff alleges that Sears breached "contractual obligations that were expressed or implied and arose from written and/or oral representations as well as unwritten policy and practice.  (See Defs.' Mem. Summ. J. at 6).  Defendant contends, however, that this claim, also known as a "Woolley claim"[4], must be dismissed because Plaintiff has acknowledged, by signed writing, that his employment was at-will at all times.  Id. at 7.

In New Jersey, the relationship between an employer and its employees is presumed to be for an indefinite amount of time and terminable at the will of either party.  Schlichtig v. Inacom Corp., 271 F. Supp. 2d 597, 603 (D.N.J. 2003).  The general rule is especially true when the employee *expressly acknowledges* his at-will status and/or has an individual written employment contract which expressly states that his employment is at-will.  Schlichtig, 271 F. Supp. 2d at 604; Ware v. Prudential Ins. Co., 220 N.J. Super. 135, 142-43 (App. Div. 1987) (emphasis added).

Plaintiff's breach of an implied contract claim is defeated when there is a clear at-will disclaimer.  Courts use the rationale that either the employment application constitutes an express contract of at-will employment or that the at-will nature of the contract precludes a plaintiff from reasonably relying on policy manual statements to the contrary.  Compare Ware,

---

[4] See Woolley v. Hoffman-LaRoche, Inc., 99 N.J. 284 (1985) (noting that an employer's policies should be construed in conformity with the reasonable expectations of its employees).

220 N.J. Super. at 144 with Schlichtig, 271 F. Supp. 2d at 605.  Each rationale will be discussed in turn.

       1.      Creation of an Express Contract

In Ware, the court held that an employer may avoid contractual liability arising from personnel policies set forth in a policy manual "by the execution of a written employment contract by which the employee expressly agrees to an at-will employment status." 220 N.J. Super at 144 (citing Batchelor v. Sears, Roebuck and Co., 574 F. Supp. 1480 (E.D. Mich. 1983). This court stated that "[p]laintiff's signed employment application represents an individual employment contract that supersedes any implied contractual obligations that may have been created by [Chartwells'] Associate Handbook." Renart v. Chartwells, 2003 U.S. Dist. LEXIS 17653, *5 (D.N.J. 2003), aff'd. 122 Fed. Appx. 559 (3d Cir. 2004).  In Ware, the New Jersey Appellate Division, by examining other holdings that have interpreted Sears' employment application, determined that it was an at-will contract that cannot be altered by [Sears'] other policies and procedures.  See Novosel v. Sears, Roebuck and Co., 495 F. Supp. 344 (E.D. Mich. 1980); Batchelor, 574 F. Supp. 1480, McCormick v. Sears, 712 F. Supp. 1284, 1286 (W.D. Mich. 1989) (granting summary judgment for Sears because employment application constituted express contract for at-will employment); Summers v. Sears, Roebuck, and Co., 549 F. Supp. 1157, 1161 (E.D. Mich. 1982) (same; Harrison v. Sears, Roebuck, and Co., 189 Ill. App. 3d 980 (1989).[5]

---
     [5]

Compare Preston v. Claridge Hotel & Casino, Ltd., 231 N.J. Super. 81, 87 (App. Div. 1989) (holding that an implied contract was created by Claridge's policies and procedures handbook. The court noted that "[i]f Claridge wished to advise its employees that they could be discharged

Here, Plaintiff's acknowledgment is clear.  Plaintiff's employment application[6] indicated a clear

acknowledgment directly above the line for Plaintiff's signature that any employment relationship between Plaintiff and Sears would be terminable at any time.

(Defs.' Mem. Summ. J. at 8, see also Defs.' Ex. D).  Specifically, the signed application states, "I agree . . . my employment and compensation can be terminated,

with or without cause, and with or without notice, at any time, at the option of either the Company or myself."  Id.  Plaintiff's signed acknowledgment created an

express contract for at-will employment.  Plaintiff cannot establish an implied contract since all he has pointed to are his own vague assurances of counseling and

"progressive discipline" from unnamed managers, rather than termination.  Thus, Plaintiff's argument, as a matter of law, must fail since there is no implied

contract.  As such, Defendant's Motion for Judgment as a Matter of Law is Granted with respect to Count VII.

       2.     <u>Even if there is an Implied Contract, Plaintiff's Reliance on Defendants' Policies and Procedures is Unreasonable as a Matter of Law.</u>

Even if the Court determined that there was an implied contract, Defendants are nonetheless entitled to Judgment as a Matter of Law because
Plaintiff's reliance on Defendants' Policies and Procedures Handbook is unreasonable.

In <u>Woolley</u>, the court held that widespread employment policies that provide certain benefits or job security provisions should be construed in

accordance with the "reasonable expectations" of the employees.  99 N.J. at 297-98; <u>Nicosia</u>, 136 N.J. at 401.  Therefore, no <u>Woolley</u> contract can exist where the

employee's stated subjective belief regarding the employer's policies is unreasonable.  <u>Schlichtig</u>, 271 F. Supp. 2d at 605; <u>Ware</u>, 220 N.J. Super. at 143.  In

<u>Schlictig</u>, the court noted that "[w]here an employee has executed a separate written contract in which he has expressly agreed that his employment can be

terminated 'at-will', it is that agreement and not the disciplinary policies and termination procedures of his employer's manual or handbook, which establishes the

employee's 'reasonable expectations' concerning the nature of his employment relationship."  <u>Schlichtig</u>, 271 F. Supp. 2d at 604.  <u>See also</u> <u>D'Alessandro v.</u>

<u>Variable Annuity Life Ins. Co.</u>, 1990 WL 191914 (D.N.J. 1990)(stating that "[w]here an employee has an individual contract providing for termination by either

party at any time it is hard to conceive that her reasonable expectations would lead her to believe subsequently distributed materials would alter those terms");

<u>Radwan v. Beecham Labs.</u>, 850 F.2d 147 (3d Cir. 1988)(the court, applying New Jersey substantive law, recognized that at-will language in an employment

application rendered plaintiff's stated reliance on his employer's "dismissal for cause" policies unreasonable as a matter of law for purposes of a <u>Woolley</u>

analysis).

Furthermore, courts throughout the country have considered the precise issue presented in this case and have uniformly found that the at-will

acknowledgment in Sears' employment application notifies prospective employees of their at-will status and precludes a finding of an implied contract with terms

contrary to an at-will relationship.  <u>See, e.g.</u>, <u>Reid v. Sears, Roebuck, and Co.</u>, 790 F.2d 453, 460-61 (6th Cir. 1986)(affirming summary judgment for Sears in

each of three consolidated appeals and noting that "[e]very reported district court case involving a claim of unlawful discharge in the face of the language

contained in the Sears' application has resulted in summary judgment for Sears); <u>Ringwelski v. Sears, Roebuck, and Co.</u>, 636 F. Supp. 519, 520 (E.D. Mich.

1985)(granting summary judgment for Sears because at-will language in employment application precluded a finding of an implied employment contract); <u>Waddy</u>

<u>v. Sears, Roebuck, and Co.</u>, 1994 U.S. Dist. LEXIS 9719, at *31-32 (N.D. Cal. 1994) (same); <u>Blinker v. Sears, Roebuck, and Co.</u>, 1991 U.S. Dist. LEXIS 20178,

at *11-12 (W.D. Tex. 1991) (same); <u>Corona v. Sears, Roebuck, and Co.</u>, 1988 U.S. Dist. LEXIS 17376, at *7-8 *D. Ohio 1988) (same); <u>Luft v. Sears, Roebuck,</u>

---

at will, such a warning should have been set forth expressly) <u>with</u> this case, where Sears' explicitly had an express at-will employment provision.

   [6] The employment application was offered in support of Defendants' motion for Summary Judgment and marked as trial exhibit D-3.  Counsel have agreed that the Court may consider this exhibit in deciding the Rule 50 motion for Judgment as a Matter of Law.  After this ruling, however, D-3 is no longer relevant to this case.

and Co., 1984 U.S. Dist. LEXIS 18747 (D. Iowa 1984) (same); Martin v. Sears, Roebuck, and Co., 111 Nev. 923, 928 (1995) (same); Reed v. Sears, Roebuck, and Co., 188 W. Va. 747, 753 (1992) (same).

Here, Plaintiff submitted an employment application that in unambiguous language stated that a prospective employee can be terminated upon the will of either party.  Plaintiff argues that Defendants' at-will disclaimer is not valid since it was not "conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it." (Pl. Opp. Br. Summ. J. at 9). However, Plaintiff acknowledged the at-will provision by "signing upon the dotted line" and "later admitting that he read the 'at-will' paragraph."  (See Defs.' Ex. E, at 85-86).  Thus, Plaintiff cannot contend that he did not know the at-will provision was present.

Furthermore, Plaintiff alleges that a disclaimer may be overcome by the employer's actions when the employer fails to explain the impact of a disclaimer. (Pl. Opp. Br. Summ. J. at 11).  However, the impact of this disclaimer is set forth through its unambiguous language: "I agree . . . my employment and compensation can be terminated, with or without cause, and with or without notice, at any time, at the option of either the Company or myself." (Defs.' Mem. Summ. J. at 8; see also Defs.' Ex. D).

Plaintiff points to Sears' policies which state that "[i]f associates' work, conduct, or attitude is unsatisfactory, management should make a sincere effort to help associates correct their faults and only release associates when such efforts are unsuccessful."  (Pl.'s Tr. Ex. 25A). Further, the policy also states that "[c]ertain situations [of dishonesty and willful misconduct] warrant a departure from the corrective review process and . . . [c]ould result in immediate termination."  (Pl.'s Tr. Ex. 25A - 25B).  However, these policies are inapplicable here since this case deals neither with "unsatisfactory work, conduct, or attitude" nor "dishonest or willful

misconduct".  Thus, Sears' procedures that govern these situations are inapplicable to this case. (See Pl.'s Tr. Ex. 25C - 25D).  Further, even if these policies did apply, the policies will not trump an unambiguous and conspicuous at-will employment disclaimer.

Since Defendants' at-will employment disclaimer was unambiguous and conspicuous, Defendants' further explanation of the disclaimer would shed no light on the obvious: that the employment application created an express and unambiguous at-will employment contract.

Plaintiff contends that the holdings in Nicosia v. Wakefern Food Corp., 136 N.J. 401 (1994) and Gilbert v. Durand Glass Mfg. Co., Inc., 258 N.J. Super. 320 (1992) control.  We believe that both Nicosia and Gilbert are distinguishable and that our holding today does not run afoul either case.

In Nicosia, the court held that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will."  Nicosia, 136 N.J. at 407-08 (citing Woolley, 99 N.J. at 284).  At the same time, however, the court explained that "[a]n effective disclaimer by the employer may overcome the implication that an employment manual constitutes an enforcement contract of employment."  Id. at 412.  An effective disclaimer exists when (1) it is clear and (2) it is in a very prominent position.  Id. at 414-15.

In order to be "clear", the language of the disclaimer must make clear that the "employer continues to have absolute power to fire anyone with or without cause."  Id. at 414.  In Nicosia, the court found the "employer's disclaimer failed to constitute an 'appropriate statement . . .

because it does not use 'straightforward terms'." Id.  Rather, it contained "confusing legalese,

such as the terms "not contractual," "subject to . . . interpretation," and "consideration". Id.

    Contrary to the employer's disclaimer in Nicosia, Sears' contract used straightforward

terms.  (Defs.' Ex. D).  The disclaimer does use the word "consideration", but its use would

hardly be grounds for describing it as "confusing legalese".  Id.  The disclaimer clearly reads, in

relevant part, ". . .and my employment and compensation can be terminated with or without

cause, and with or without notice, at any time, at the option of either the company or myself."

Id.  Thus, Sears' disclaimer is clear and does not offend the Nicosia holding.

    In addition to being clear, the disclaimer must also be in a prominent position.

"Disclaimers in employee manuals fail for lack of prominence when the text is not set off in such

a way as to bring the disclaimer to the attention of the reader."  Nicosia, 136 N.J. at 415.  The

prominence requirement can be met in many ways and is "conspicuous when it is so written that

a reasonable person against whom it is to operate ought to have noticed it."  Id.  Courts have

noted that a "reader's attention may be called by setting off the disclaimer with different type,

including bold."  Id.  It may also be "underlined or set off by a different color."  Id.

    In Nicosia, the employer's disclaimer failed the prominence test because the "statement

was not highlighted underscored, *capitalized*, or presented in any other way to make it likely that

it would come to the attention of an employee reviewing it."  Id. 415-16 (emphasis added).

    Here, on the other hand, the disclaimer was written directly above the employee signature

line. (Defs.' Ex. D).  Furthermore, the disclaimer was capitalized, specifically stating "PLEASE

READ THE FOLLOWING PARAGRAPH BEFORE SIGNING THIS APPLICATION." Id.

Moreover, the Plaintiff admitted to having read and noticed the at-will disclaimer in Sears' employment application, further illustrating that the disclaimer was conspicuous and indeed reasonable.  (Defs.' Ex. E).

Thus, since Sears' has an enforceable and prominent disclaimer on their employment application, it would be unreasonable for Plaintiff to rely on other manuals in the face of a signed employment agreement.  Nicosia is distinguishable for the aforementioned reasons in addition to the fact that the plaintiff in Nicosia had never acknowledged or signed an employment application that specifically indicated that the employment was at-will.

Therefore, even if Defendants' employment application did not create an express contract, which it did, Plaintiff's reliance on other Sears' policies and procedures in the face of a signed, unambiguous employment agreement was unreasonable as a matter of law.  As such, Defendants Motion for Judgment as a Matter of Law is granted with respect to Count VII.[7]    **D.**

***Breach of the Implied Covenant of Good Faith and Fair Dealing (Count VIII)***

Plaintiff claims that the Defendant breached its implied covenant of good faith and fair dealing.  (Defs.' Mem. Summ. J. at 16).  The Defendants argue that Plaintiff's claim must be

---

[7] The Court also distinguishes Gilbert, which discussed (a) whether the Woolley doctrine applied only to written and not oral company policies and (b) whether there was a clear and definite oral promise made to the Plaintiff in that case.  Gilbert, 258 N.J. at 322-23.  There, the court noted that the employee had been employed without any individual contract, and as such would regard the employment manual - which contained a provision that he would not be fired without cause - as a binding commitment that was legally enforceable.  Id. at 327.  The court noted that to limit Woolley to the written policy would "permit the employer to maintain an unwritten policy concerning termination and apply it in a selective and disparate manner." Id. at 329.  Here, on the other hand, there is no argument whatsoever that there was an oral contract. Furthermore, the Plaintiff in the case at bar did sign an individual contract.  The fact that it was Sears' standard employment agreement form does not preclude it from being an individual contract.

dismissed because Plaintiff's employment was at-will and New Jersey law does not recognize an implied covenant of good faith and fair dealing in at-will employment relationships. Id. Specifically, under New Jersey law, "an implied covenant of good faith and fair dealing may not be invoked to restrict the authority of employers to fire at-will employees." Whiting v. Computer Assocs., 2001 U.S. Dist. LEXIS 23539, at *14 (D.N.J. 2001); see also McDermott v. Chilton Co., 938 F. Supp. 240, 246 (D.N.J. 1995), and Citizen's Bank of New Jersey v. Libertelli, 215 N.J. Super. 190, 194 (App. Div. 1987).

In the present case, Plaintiff had an express at-will employment contract. Plaintiff's employment was at-will through the parties' express contract, which was embodied in the employment application. Further, Plaintiff acknowledged his at-will status by signing the employment application. Thus, pursuant to New Jersey law, there is no implied covenant of good faith and fair dealing for Plaintiff since his employment was at-will.

Accordingly, as a matter of law, Defendants' Motion for Judgment as a Matter of Law is granted with respect to Count VIII.

## III.   CONCLUSION

For the reasons stated, Defendants' Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50 is granted with regards to Count II, VII, and VIII and denied without prejudice to Counts I and III. An appropriate Order accompanies this Opinion.

_/s/ John J. Hughes_____
**JOHN J. HUGHES**
**UNITED STATES MAGISTRATE JUDGE**

DATED:  September 7, 2007